**In re SOUTHERN EXPRESS AIRWAYS, INC., Debtor.**

**Bankruptcy No. 86–00142–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

March 26, 1986.

Timothy J. Norris, Miami, Fla., for Southern Exp. Airways, Inc.

Russell S. Bogue, III, Tampa, Fla., for Lee County, Fla.

ORDER ON MOTION OF LEE COUNTY FOR STAY RELIEF

A. JAY CRISTOL, Bankruptcy Judge.

This matter was heard by the Court on February 25 and March 11, 1986, on the

motion of Lee County, Florida for relief from the automatic stay. The facts are not in dispute, but the parties differ in their interpretation of a controlling Florida statute.

The Debtor was an air carrier operating scheduled commuter services in Florida prior to the filing of its Chapter 11 petition. It currently is not operating. Lee County owns and operates the Southwest Florida Regional Airport, into which the Debtor operated aircraft. Pursuant to the Airport Use Agreement between Lee County and the Debtor, the Debtor was provided the right to the exclusive use of certain facilities at the airport (primarily ticket counter, waiting, office, and cargo space) and the non-exclusive right to gate positions and the baggage claim area with the other air carriers operating into the airport.

Prior to the filing of its petition, the Debtor had failed to make payments to Lee County as required by the Airport Use Agreement, and Lee County, relying upon § 329.40, *Florida Statutes*, seized a Piper Chieftain aircraft with registration number N35892. As of the filing date, the Debtor owed Lee County $3,358.55 for certain exclusive space, $2,068.07 for baggage claim, and $2,522.66 for landing fees for actual aircraft landings at the airport. The issue presented here for decision is to what extent § 329.40, *Florida Statutes*, provides a lien on the seized aircraft to secure these obligations.

Section 329.40 reads as follows:

329.40 Airport facilities; lien for landing and other fees.—

(1) The governing body of any publicly owned and operated airport shall have *a lien* upon all aircraft landing upon any airport owned and operated by it for all charges *for landing fees and other fees and charges for the use of the facilities of such airport by any such aircraft,* when payment of such charges and fees is not made immediately upon demand therefor to the operator or owner of the aircraft by a duly authorized employee of the airport. The lien for the full amount of the charges and fees due to the airport or governing body of any publicly owned and operated airport attaches to any aircraft owned or operated by the person owing such charges and fees. Such lien may be enforced as provided by law for the enforcement of warehousemen's liens in this state.

(2) It is unlawful for any person to remove or attempt to remove any such aircraft from such airport after service of notice of the lien upon the owner or operator thereof or after posting of such notice upon such aircraft. Any person who removes or attempts to remove any such aircraft from such airport after service or posting of the notice of lien as provided in this subsection and before payment of the amount due to the airport *for landing fees and charges incurred by such aircraft* is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083. [emphasis added]

Lee County believes that the lien secures all of the Debtor's obligations under the Airport Use Agreement, while the Debtor argues that the lien secures only those landing fees actually incurred by the seized aircraft.[1] This Court disagrees with both positions.

The statute is drafted in what the Court finds to be an ambiguous fashion. The Court reads the first sentence of § 329.-40(1) and the second sentence of § 329.-40(2) to mean that the lien for landing fees and other charges is for those charges incurred by the particular aircraft which has been seized. While the second sentence of subsection (1) could be read to mean that the lien asserted against any one aircraft is for unpaid charges incurred by all of the aircraft operated into the airport, that reading is inconsistent with the first sentence

---

**1.** The sum of $2,522.66 for landing fees covers 110 landings of two types of aircraft. The landing fee for the seized aircraft is $21.98 per landing, and it landed 10 times during the relevant time period. Thus, the landing fees incurred by the seized aircraft alone totalled only $219.80.

and with subsection (2). Further, if Lee County's position is correct that the lien of § 329.40 has priority over an earlier perfected security interest in the aircraft (a conclusion which the Court doubts it would reach, which is not necessary for a decision here), then a secured creditor could find its perfected lien on an aircraft to be displaced or worthless because of the fortuitous circumstance that that aircraft happened to be the one seized even though the bulk of the air carrier operations were conducted, as here, by other aircraft which very well might not be subject to security interests or subject to security interests in favor of other secured creditors. Read together, the Court concludes that the lien against an aircraft is for charges incurred only by that aircraft.

The Debtor's position that the lien covers only landing fees is not consistent with the language in § 329.40(1) which speaks of "landing fees *and* other fees and charges for the use of the *facilities* of such airport" (emphasis added). The term "facilities" is broad and certainly indicates more than merely runways, taxiways and ramp space. Thus, the Court is of the opinion that the lien covers the actual landing fees incurred by the subject aircraft as well as the pro rata share of the use of the airport facilities by that aircraft. This results in the lien on the seized aircraft securing the sum of $713.13.[2]

The Court recognizes that the Florida Legislature may have intended that § 329.-40 be interpreted as Lee County urges. That, however, is not the way the statute reads. If the Legislature does intend the result which Lee County urges, it should revise the statute to make its intent clear and explicit.[3]

In accordance with this interpretation of § 329.40, *Florida Statutes*, it is

ORDERED that the motion of Lee County for relief from the automatic stay is granted; that the automatic stay of 11 U.S.C. § 362(a) is hereby modified to permit Lee County to enforce its rights under § 329.40, *Florida Statutes*, with respect to the Piper Chieftain aircraft with registration number N35892 but only if the obligation of $713.13 secured by the lien on the aircraft is not paid within fifteen days of the date of this Order; and that the automatic stay of 11 U.S.C. § 362(a) is hereby further modified to permit Lee County to terminate the Airport Use Agreement with the Debtor under applicable law.

---

**2.** As explained in footnote 1, the landing fees incurred by the aircraft total $219.80. The seized aircraft landed 10 times out of a total of 110 landings. That proportion of the total for the exclusive space and the baggage claim, ($3,358.55 plus $2,068.07 equals $5,426.62) is $493.33. Adding that figure to the landing fees of $219.80 results in a total sum of $713.13.

**3.** If the Legislature does revise § 329.40(1), it should also consider revising subsection (2). It now literally prohibits any "attempt to remove" an aircraft, which literally would include an attempt through the judicial system. Subsection (2) ought to read something like "attempt to remove by other than lawful means" or similar language to avoid literally prohibiting a party from seeking redress through the judiciary of a possible wrongful detention.